# EXHIBIT A

COMMONWEALTH OF MASSACHUSETTS
SUPERIOR COURT DEPARTMENT

SUFFOLK, ss

CINDY D. BROWN,
as SPECIAL ADMINISTRATOR of the
ESTATE OF DENNIS G. BROWN,

*Plaintiff*

v.

FMR, LLC, FIDELITY INVESTMENTS
INSTITUTIONAL SERVICES COMPANY, INC.
and VERITUDE, LLC,

*Defendants*

CIVIL ACTION NO. 19-1949 E

COPY

RECEIVED
SUPERIOR COURT-CIVIL
MICHAEL JOSEPH DONOVAN
CLERK/MAGISTRATE
JUN 18 2019

## COMPLAINT AND JURY DEMAND

### INTRODUCTION

1. This is an action brought pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), the Massachusetts Wage Act, M.G.L. c. 149, §§ 148 and 150, the Massachusetts overtime law, M.G.L. c. 151, §§ 1A and 1B, and Massachusetts common law seeking the recovery of unpaid wages and overtime pay, liquidated damages, treble damages, attorney's fees, interest, and costs.

### PARTIES

2. The plaintiff Cindy D. Brown ("Plaintiff"), is the duly-appointed Special Administrator of the Estate of Dennis G. Brown (the "Estate"), having been so appointed on June 10, 2019 by Dane County Circuit Court, State of Wisconsin, Case Number 2019PR432.

3. Defendant FMR, LLC ("FMR") is a Delaware limited liability company with a principal place of business at 245 Summer Street, Boston, Suffolk County, Massachusetts. Upon

information and belief, it is the parent company of the various companies that operate under the name "Fidelity Investments."

4. Defendant Fidelity Investments Institutional Services Company, Inc. ("FIIS"), is a Massachusetts corporation with a principal place of business at 245 Summer Street, Boston, Suffolk County, Massachusetts. FIIS is a Fidelity-affiliated company that, upon information and belief, is a subsidiary of FMR, LLC.

5. Defendant Veritude, LLC ("Veritude") is a Massachusetts limited liability company with a principal place of business at 245 Summer Street, Boston, Suffolk County, Massachusetts. Veritude is a Fidelity-affiliated company that, upon information and belief, is a subsidiary of FMR, LLC.

6. The term "Defendants" refers to the three defendants. The term "Fidelity" refers to the various affiliated companies that operate under the rubric of Fidelity Investments and which include the three defendants.

## ADMINISTRATIVE PREREQUISITES

7. On June 12, 2019, Plaintiff filed a complaint on behalf of the Estate with the Fair Labor Division of the Massachusetts Attorney General's Office ("AGO") against the Defendants for unpaid compensation.

8. On June 13, 2019, the AGO issued written authorization to the plaintiff to bring this action.

## FACTS

9. From 1997 to 2000, Dennis G. Brown ("Brown") worked for Fidelity as the Director of Finance of the Retirement Division, working in Fidelity's office in Boston,

Massachusetts and then, later, in Smithfield, Rhode Island. During this period, Brown's formal employer was FIIS.

10. In April 2000, Brown left Fidelity and moved with his family to Colorado.

11. In or about 2001, Brown, then living in Wisconsin, returned to work for Fidelity as a consultant. When he returned or soon thereafter, he was formally hired as a temporary employee of Veritude, a Fidelity-owned entity that provides temporary staffing services for Fidelity.

12. From about 2001 through June 30, 2017, Brown worked as a full-time employee of Veritude under a series of contracts placing him to work for Fidelity on a series of contracts

13. For a period of time, Brown was paid a salary and was reimbursed for his expenses travelling to and from Wisconsin. However, in about 2003 or 2004, Brown was switched to an hourly employee and Veritude no longer reimbursed him for travel expenses. As an hourly employee, he was entitled to be paid time and one half for work over 40 hours in a given week.

14. From about 2003 or 2004, when he was switched to an hourly employee, through June 30, 2017, Brown worked remotely under a series on contracts, typically spanning six months to a year. He would provide services to Fidelity operations in Boston and elsewhere around the world while he was located at his residence.

15. During this period, Veritude was simply the corporate entity that issued his paycheck and he would provide services to and interact with various Fidelity-affiliated companies, principally FIIS. For instance, upon information and belief, his director supervisors were all employees of FIIS. Aside from being deemed a "temporary" employee of Veritude and

3

having his paycheck issue by Veritude, for all intents and purposes, he was a full-time employee of FIIS.

16. During the approximately sixteen-year period Brown provided services to Fidelity remotely as a temporary employee of Veritude, he worked fulltime and never had a lapse of services.

17. Typically, the Defendants would notify him of the contract extension about four weeks before the current contract was set to end. The notification would be by email, state the contract period, his hourly rate, and his title, which was always "Business Analyst."

18. Also, while Brown was classified as a temporary employee and his official title was that of "Business Analyst," his level of responsibilities was much higher than his title indicated and, given his level of responsibilities and the length of his continuous service, he did not satisfy the requirements of being a temporary employee under the Defendants' own guidelines.

19. If he had been properly classified, he would have been entitled to higher pay, paid vacation, and other benefits.

20. From 2001 to 2009, Brown lived in Wisconsin. After living in Tennessee for about six months, he and his family lived in Kentucky from 2010 to 2016. In about September 2016, he moved back to Wisconsin.

21. In June 2017, the Defendants chose not to extend Brown's contract and his last assignment ended June 30, 2017.

22. For at least the last six years of his assignments, Brown's hourly rate was $75 per hour with an overtime rate of $112.50 per hour.

23. While Brown was entitled to time-and-a-half for overtime, the Defendants made clear to Brown that he was expected to only bill between 40 to 45 hours per week even if he worked more hours, which he regularly did.

24. Particularly during the last ten years of Brown's assignments, the Defendants routinely assigned Brown work which they knew would require him to work well in excess of 45 hours a week.

25. Particularly during the last ten years of his services, Brown regularly worked 20 to 40 hours of overtime a week. However, consistent with the Defendants' instructions and clear expectations, Brown only submitted bills/timesheets totally 40 to 45 hours per week. Based on the Defendants' conduct and representations, Brown expected that, if his timesheets accurately reflected his time, the Defendants would terminate his contract.

26. When Brown worked, he would log into the Defendants' computer system and, when he was not working, he would log out. Because of this and because of the requirements of his assignments, the Defendants were well aware that Brown was working many more hours than he was being compensated for.

27. Despite Brown regularly working 60 to 80 hours a week, the Defendants only paid Brown 40 to 45 hours per week.

28. While Plaintiff has not yet obtained records from the Defendants, Plaintiff estimates that, over at least the last six years of Brown's employment, he was not paid approxialty $117,000 in wages per year.

29. Also, as Brown was improperly deemed a temporary employee, he was not entitled to vacation time. Also, the Defendants never informed Brown that he was entitled to paid

5

sick leave. Brown worked extensive hours without vacation or days off, which had a significant impact on his health.

30. In January 2018, Brown was diagnosed with a brain tumor and, on February 28, 2019, Brown lost his 14-month battle with brain cancer.

31. Cindy Brown is Brown's widow and, on June 10, 2019, she was appointed the special administrator of Brown's estate by the State of Wisconsin, Dane County Circuit Court, Case Number 2019PR432. She brings this action on his estate's behalf.

## COUNT I
### OVERTIME CLAIM – G.L. c. 151, §§ 1A, 1B

32. Plaintiff repeats all previous allegations as though set forth herein.

33. Brown, at all times relevant, was not exempted from the provisions of G.L. c. 151, § 1A.

34. Pursuant to G.L. c. 151, § 1A, an employer is required to pay its employee one and a half times that employee's regular rate of pay for time worked in excess of 40 hours in a week.

35. Each of the defendants was an "employer" of Brown's for purposes of G.L. c. 151, §§ 1A and 1B.

36. Plaintiff has satisfied all prerequisites to suit under G.L. c. 151, §§ 1A and 1B.

37. During the three-year period predating the filing of the administrative complaint with the Massachusetts Attorney General's Office on June 12, 2019, Brown worked in excess of 40 hours in a work week and was not paid one and a half times his regular rate of pay for each hour worked over 40 hours.

38. Pursuant to G.L. c. 151, § 1B, any employer or officer or agent of such employer who fails to pay an employee one and a half times the employee's regular rate of pay for time

worked in excess of 40 hours in a week, is liable to the employee for three times the lost overtime compensation, plus the costs of litigation and reasonable attorney's fees.

39. By failing to pay Brown the required overtime pay, the Defendants have violated G.L. c. 151, §§ 1A and 1B and are obligated to pay Brown's estate three times the amount of such wages owed, plus the Plaintiff's costs and reasonable attorney's fees incurred in this action.

WHEREFORE, Plaintiff demands judgment against the Defendants and asks the Court to award her three times of the wages owed for overtime work, plus attorney's fees, interest, and costs, and such other relief as the Court deems just and proper.

## COUNT II
## OVERTIME CLAIM – FLSA, 29 U.S.C. § 207

40. Plaintiff repeats all previous allegations as though set forth herein.

41. Brown was a "covered employee" within the meaning of the FLSA.

42. The Defendants were Brown's joint employers within the meaning of the FLSA.

43. Under § 207 of the FLSA, any covered employee who works for an employer more than 40 hours in a work week must be paid one-and-a-half times his regular rate of pay for those hours over 40 hours.

44. The Defendants willfully violated the FLSA by failing to pay Brown one-and-a-half times his regular rate of pay for each hour he worked over 40 hours in a work week.

45. Brown was harmed, injured and damaged as a result of the Defendants' violations of the FLSA.

WHEREFORE, Plaintiff prays that this Court declare the acts complained of herein are in violation of the FLSA; award Plaintiff all unpaid overtime compensation, an equal amount as liquidated damages, plus costs and attorney's fees as provided by the FLSA; and grant such other and further relief as the Court deems appropriate.

## COUNT III
### WAGE CLAIM – G.L. c. 149, §§ 148, 148C, and 150

46. Plaintiff repeats all previous allegations as though set forth herein.

47. Plaintiff has satisfied all prerequisites to suit under G.L. c. 149, § 148 and § 150.

48. Each of the defendants was Brown's "employer" within the meaning of G.L. c. 149, § 148.

49. During the three-year period predating the filing of the administrative complaint with the Massachusetts Attorney General's Office on June 12, 2019, Brown worked numerous hours for which he was not compensated for.

50. The Defendants failed to pay Brown for all hours worked.

51. In addition, the Defendants failed to provide Brown earned sick time as required by G.L. c. 149, § 148C, and failed to provide him paid vacation. As a result, Brown did not take sick time or vacation time off and/or took sick time and was not compensated for it.

52. By failing to pay Brown his wages for all hours worked and in failing to credit him for sick time and vacation time, the Defendants have violated G.L. c. 149, § 148 and are obligated to pay Plaintiff three times the amount due, plus Plaintiff's costs and reasonable attorney's fees in seeking to collect these amounts in pursuing this lawsuit.

WHEREFORE, Plaintiff demands judgment against the Defendants and asks the Court to award Plaintiff three times the amount of the wages Brown should have been paid, plus reasonable attorney's fees, interest, and costs, and such other relief as the Court deems just and proper.

## COUNT IV
### BREACH OF CONTACT

53. Plaintiff repeats all previous allegations as though set forth herein.

54. The Defendants and Brown entered into a series of legally binding contracts under which the Defendants agreed to pay Brown on an hourly basis for each hour worked and time and a half that rate for each hour worked over 40 hours in a given week.

55. The Defendants failed to pay Brown for each hour worked in accordance with the contract.

56. As a direct and foreseeable consequence of the Defendants' breaches of these agreements, Brown has suffered harm, injury, and damages.

WHEREFORE, Plaintiff demands judgment against the Defendants and asks the Court to award Plaintiff compensatory damages, attorneys' fees, interest, and costs, and such other relief as the Court deems just and proper.

## COUNT V
### BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

57. Plaintiff repeats all previous allegations as though set forth herein.

58. The Defendants and Brown entered into a series of legally binding contracts under which the Defendants agreed to pay Brown on an hourly basis for each hour worked and time and a half that rate for each hour worked over 40 hours in a given week.

59. In each of these contracts, there was an implied covenant of good faith and fair dealing.

60. The Defendants breached such covenant by assigning Brown work that it knew or should have known would require well in excess of 40 hours per week, in signaling to Brown that he was only expected to bill between 40 to 45 hours per week, and by failing to pay him for all the time that it knew or should have known he was working.

61. As a direct and foreseeable consequence of the Defendants' breaches of the implied covenant in these agreements, Brown has suffered harm, injury, and damages.

WHEREFORE, Plaintiff demands judgment against the Defendants and asks the Court to award Plaintiff compensatory damages, attorneys' fees, interest, and costs, and such other relief as the Court deems just and proper.

### COUNT VI
### TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS
### (FMR and FIIS only)

62. Plaintiff repeats and incorporates all allegations stated above.

63. To the extent that this Court determines that Brown did not have a contractual relationship with FMR and/or FIIS, and that his contractual relationship was only between him and Veritude, than FMR and FIIS should be held liable for their tortious interference with such contract.

64. FMR and FIIS intentionally and maliciously interfered with Brown's contractual relationship with Veritude by making clear to Brown and pressuring him to submit timesheets for 40 to 45 hours per week despite the fact that they assigned him work requiring many more hours and despite the fact that they knew he was working many more hours and that his timesheets underreported his hours.

65. As a direct and proximate result of their wrongful conduct, Brown suffered harm and damages.

WHEREFORE, Plaintiff demands judgment against the Defendants for compensatory damages, interest, and costs, and such other relief as the Court deems just and proper.

### COUNT VII
### QUANTUM MERUIT/UNJUST ENRICHMENT

66. Plaintiff repeats and incorporates all allegations stated above.

67. As the Defendants assigned Brown worked requiring well in excess of 40 hours per week and knew or should have known that his timesheets were understating the amount of

his hours, the Defendants were unjustly enriched by Brown's services which the Defendants did not compensate him for and, in fairness and in accordance with principles of equity, the Defendants should be liable to Plaintiff for the value of such uncompensated services.

WHEREFORE, in the interests of equity, this Court should award Plaintiff, the fair value of Brown's services which the Defendants did not compensate him for.

### JURY DEMAND

PLAINTIFF DEMANDS A TRIAL BY JURY TO ALL ISSUES SO TRIABLE.

Respectfully Submitted,

The Plaintiff,

CINDY D. BROWN, as SPECIAL ADMINISTRATOR of the
ESTATE OF DENNIS G. BROWN,
By her attorney,

William T. Harrington (BBO No 564445)
Harrington Law, P.C.
738 Main Street
Hingham, MA 02043
(781) 385-7230
wharringtonlaw@gmail.com

Dated: June 18, 2019

| CIVIL ACTION COVER SHEET | DOCKET NUMBER 19-1949E | Trial Court of Massachusetts The Superior Court |
|---|---|---|
| PLAINTIFF(S): Cindy D. Brown, as Special Admin. of Estate of Dennis G. Brown | | COUNTY Suffolk |
| ADDRESS: 1207 Jenifer Street, Apt. 1, Madison, WI 53703 | | |
| | DEFENDANT(S): FMR, LLC, Fidelity Investments Institutional Services Company, Inc. and Veritude, LLC | |
| ATTORNEY: William T. Harrington, Harrington Law, P.C. | | |
| ADDRESS: 738 Main Street, Hingham, MA 02043 | ADDRESS: 245 Summer Street, Boston, MA 02110 | |
| 781-385-7230; wharringtonlaw@gmail.com | | |
| BBO: 564445 | | |

TYPE OF ACTION AND TRACK DESIGNATION (see reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| A01 | Services, Labor, Materials (Wage Action) | F | [X] YES [ ] NO |

*If "Other" please describe:

Is there a claim under G.L. c. 93A?  [ ] YES  [X] NO

Is this a class action under Mass. R. Civ. P. 23?  [ ] YES  [X] NO

STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff's counsel relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

TORT CLAIMS
(attach additional sheets as necessary)

A. Documented medical expenses to date:
 1. Total hospital expenses ................................. $_____
 2. Total doctor expenses ................................... $_____
 3. Total chiropractic expenses ........................... $_____
 4. Total physical therapy expenses .................... $_____
 5. Total other expenses (describe below) ............ $_____
     Subtotal (A): $_____
B. Documented lost wages and compensation to date ............ $_____
C. Documented property damages to date ............................... $_____
D. Reasonably anticipated future medical and hospital expenses .. $_____
E. Reasonably anticipated lost wages .................................... $_____
F. Other documented items of damages (describe below) .......... $_____

G. Briefly describe plaintiff's injury, including the nature and extent of injury:

TOTAL (A-F): $_____

CONTRACT CLAIMS
(attach additional sheets as necessary)

[ ] This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement. Mass. R. Civ. P. 8.1(a).

Provide a detailed description of claim(s): This is an action under the FLSA, the Wage Act, and Mass Overtime Law, seeking wages of about $117,000 per year for period 6 years before suit through June 30, 2017 when plaintiff's decedent was terminated. Trostel

TOTAL: $470,000 plus

Signature of Attorney/ Unrepresented Plaintiff: X    Date: 6/18/19

RELATED ACTIONS: Please provide the case number, case name, and county of any related actions pending in the Superior Court.

CERTIFICATION PURSUANT TO SJC RULE 1:18

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

Signature of Attorney of Record: X    Date: 6/18/19